Sosman, J.
Plaintiff filed the present action, pro se, for damages caused by the actions of defendant Northern Tree Service, at the direction of defendant Massachusetts Electric Company and with the permission of defendant Town of Auburn, in cutting down certain trees on and abutting plaintiffs property. After trial of this matter without jury, the court renders its findings of fact and conclusions of law as follows.
Findings of Fact
Plaintiff is the owner of real property located at 269 Bryn Mawr Avenue in Auburn, Massachusetts. From September 24, 1971 to September 28, 1993, plaintiff owned said property as a tenant by the entirety with her former husband. On September 28, 1993, the property was deeded to plaintiff.
The Town of Auburn owns a strip of land approximately eight feet in width which runs between plaintiffs property and Bryn Mawr Avenue. The boundary between the Town’s property and the plaintiffs property is marked by a stone marker on the right and a metal pipe on the left. As such, the boundary line is readily ascertainable.
Prior to October 2, 1990, various trees and saplings grew on the Town’s eight foot strip along Bryn Mawr Avenue and on the abutting land owned by plaintiff. The growth was natural, not the product of landscaping work by either the Town or by plaintiff. During the spring, summer and fall, the foliage from this natural stand of trees provided shade and a partial screen between plaintiffs home and Biyn Mawr Avenue.
*275 Defendant Massachusetts Electric Company (MEC) maintains power lines along Biyn Mawr Avenue, located on the Town’s eight foot strip of property. In 1984, MEC had trimmed the tops of the trees in the front of plaintiffs home to keep the branches away from the power lines, but did not cut any trees down. At that time, plaintiff called and complained to MEC on account of the trimming.
In 1990 MEC again decided it was time to trim the growth along Bryn Mawr Avenue. MEC contracted with defendant Northern Tree Service (“NTS”) to perform tree removal in the Town of Auburn. Auburn’s tree warden, Glenn Mitchell, authorized MEC and NTS to remove brush and limbs which would interfere with the power lines within the next five years. Mitchell also gave MEC and NTS authorization to remove dead trees. No public hearing was held or noticed prior to the tree warden’s authorization for the cutting of the trees along the power lines.
In June, plaintiff received a post card from MEC requesting her permission to trim the trees in the front of her home. Plaintiff wrote on the card, “No permission, please call me.” She left the response card on her door. A representative of MEC came to plaintiffs home and retrieved the card. She did not hear anything further from MEC, NTS or the Town with respect to her refusal to grant permission for cutting.
On October 2, 1990, NTS cleared the trees beneath the power lines on Bryn Mawr Avenue. NTS cut down the trees, rather than simply trimming them, because the lower branches and leaves would be insufficient to sustain the trees, and mere trimming of the branches that would potentially interfere with the power lines would have left unsightly wood poles.
In front of plaintiffs house, NTS cut down 100 trees. Eighty-seven (87) of those trees were on Town property. Thirteen (13) of the trees were over the boundary on plaintiffs property. Most of the trees removed were quite small. Thirty-two (32) of them were at one-inch or less in circumference. Fifty-one (51) of the trees were at one to three inches in circumference. The other seventeen (17) trees ranged between three inches and eleven inches in circumference. The types of trees cut down were maple, oak, cherry, aspen, poplar, ash and birch.
Plaintiff was not present at the time NTS cut down the trees. She returned home from work on October 2, 1990 to find only stumps remaining of the trees in the front of her home.
Plaintiff testified that the value of her property prior to October 2, 1990 was $130,000 to $140,000, and that after that date the value dropped to $100,000. Thus, plaintiff claims that the removal of the trees reduced the value of her home by approximately $35,000.[1]
The court does not credit plaintiffs opinion as to this alleged diminution in value. The stand of trees provided a partial screen for the property, which might be of value to some potential purchasers. However, this mixed growth of miscellaneous trees, most of them quite small in circumference, would not possibly comprise such a major portion of the property’s total value. Moreover, this mixed growth could be viewed by other potential purchasers as a detriment to the property. While some, like plaintiff, might prefer the screen of trees, others might prefer the added light and sense of open space that could be obtained by their removal. On this record the court can not determine whether the removal of the trees diminished of enhanced the market value of plaintiffs property.
Rulings of Law
1. Trees on plaintiffs property
Plaintiff seeks to recover damages for trespass and treble damages under G.L.c. 242, §7 for the thirteen trees that were cut down on her property. The statute provides as follows:
A person who without license willfully cuts down, carries away, girdles or otherwise destroys trees, timber, wood or underwood on the land of another shall be liable to the owner in tort for three times the amount of the damages assessed therefor; bút if it is found that the defendant had good reason to believe that the land on which the trespass was committed was his own or that he was otherwise lawfully authorized to do the acts complained of, he shall be liable for single damages only.
G.L.c. 242, §7.
NTS, acting on behalf of MEC, trespassed on plaintiffs property and willfully cut down thirteen of her trees. Neither NTS nor MEC had plaintiffs permission to cut down her trees. The Town did not have authority to grant NTS permission to cut down plaintiffs trees, which were not on Town property and were not otherwise subject to Town control.
Defendants did not have “good reason” to believe that the thirteen trees were on Town property (i.e., on the property where they had been given authorization to remove trees). The boundary line between plaintiffs property and the Town’s property was clearly marked. Moreover, plaintiff had previously informed MEC that she was not giving permission to remove trees. Having been advised that that property owner did not want any trees on her property disturbed, it was incumbent on MEC and its contractor to take care with respect to the location of the easily ascertainable boundary. They failed to do so. They did not have good reason to believe that they were on Town property when that reason was the product of their own negligence.
NTS and MEC argue that all thirteen trees would have reached the power lines within five years, and thereby argue that they had a privilege to remove them. The burden would be on defendants to prove that they had such a privilege, and thus on defendants to prove that each of the thirteen trees removed from plaintiffs property was of a size and a growth pattern that would have endangered the power lines. They have not met that burden. They did not produce evidence of the height of the trees at the time they were cut.[2] Nor did they make any such determination at the *276 time. They mistakenly assumed that all the trees were on Town property and simply cut them all down, without regard to size. It is not credible for them to assert, as a blanket statement many years later, that all of the trees on plaintiffs property threatened the power lines to the extent that would give MEC a privilege to remove them against plaintiffs express wishes.
On this record, however, plaintiff has failed to establish the value of the trees or the diminution in value of her property that resulted from the removal of these thirteen trees. As against NTS and MEC, the court will award plaintiff nominal damages in the amount of $10 for each of the thirteen trees removed from her property, with the total then trebled pursuant to G.L.c. 242, §7.
2. Trees on Town property
Chapter 87 of the General Laws regulates the preservation of public shade trees in the Commonwealth. “Public shade trees” are defined as “[a]ll trees within a public way or on the boundaries thereof.” G.L.c. 87, §1. The trees on Town property along Bryn Mawr Avenue bordered a public way and thus were “public shade trees.”
Public shade trees may not be cut, trimmed or removed by any person other than the tree warden or his deputy. G.L.c. 87, §3.[3] Any person “injured in his property” by the tree warden’s cutting or trimming of a public shade tree may recover damages from the town by way of eminent domain proceedings. G.L.c. 87, §3.
Plaintiff claims that the removal of the public shade trees on Town property in front of her house has injured her properly, and she seeks compensation for that alleged injury. The court will assume (without deciding) that §3 allows compensation where the tree warden removes a public shade tree on property belonging to someone other than the plaintiff.[4] However, plaintiff has failed to show that the removal of the public shade trees on the Town’s property has damaged her property. She has not presented credible evidence that the removal of the Town’s trees diminished the value of her property. Reasonable minds could view the trees as unsightly undergrowth that cut off the view, cut off light, and unnecessarily reduced the open space in the front yard of the property. Others, like plaintiff, could view the screen of trees as a valuable asset that gave some privacy and shade to the property.
In the absence of credible evidence to show a diminution in market value resulting from the removal of the trees, and mindful of the fact that some persons would find the tree removal to be beneficial to the property, the court can not find that plaintiff has been “injured in her property” as a result of the tree warden’s decision to clear the Town’s trees from the area of MEC’s power lines. As such, plaintiff has no claim for damages under G.L.c. 87, §3 for the removal of those trees that stood on Town property.
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment be entered as follows:
1) On plaintiffs claim against Massachusetts Electric Company and Northern Tree Service, judgment for plaintiff Carolyn Mosley against defendants Massachusetts Electric Company and Northern Tree Service in the amount of $390, plus interest from the date of filing of the action and costs; and
2) On plaintiffs claim against the Town of Auburn, judgment for defendant Town of Auburn.

Plaintiff attempted to establish the value of the trees by submission of a handwritten list, ostensibly prepared by a former employee of Bigelow Nurseries, indicating the replacement cost for each of the trees. Defendants rightly objected to any use of this list as a method of valuing the trees, as the author of these estimates did not testify at trial. Moreover, replacement cost would not necessarily be an appropriate measure of the diminution in value of the property resulting from the removal of the trees.

From their small circumference, the court would infer that most of them were in fact very small and slender, and thus no threat whatsoever to the power lines for many, many years into the future.

Prior notice and public hearing are required prior to the warden’s removal of public shade trees. Id. If there is any opposition to the proposed removal of the shade trees, the tree warden must obtain the approval of the selectmen or mayor in order to proceed with the proposed cutting of trees. G.L.c. 87, §4. There was no notice or public hearing prior to this particular cutting. If notice had been given, plaintiff would have had an opportunity to voice her objections in advance, but nothing in the statute gives a property owner the power to prevent the warden, selectmen or mayor from proceeding with the proposed tree removal.

The restrictions of G.L.c. 87 apply to a tree on private property if the tree is along a public way. Thus, the tree warden may cut, trim or remove public shade trees that are on private property, and the warden may prevent such a property owner from taking any action with respect to his own trees. It is understandable that the legislature would allow a property owner compensation for the destruction of public shade trees on his own private land. It is not clear whether the legislature intended that there be compensation to anyone other than the owner of the affected public shade trees.